ANGELA HOPE MORRIS,

              Plaintiff,

v.                                                  Case No. 24-cv-1157-bhl

FRANK BISIGNANO[1]
Commissioner of the Social Security Administration,

              Defendant.

## DECISION AND ORDER

Plaintiff Angela Hope Morris seeks review of the final decision of the Commissioner of the Social Security Administration, denying her claim for child's insurance benefits based on disability and supplemental security income (SSI) under the Social Security Act, 42 U.S.C. § 405(g). For the reasons set forth below, the Commissioner's decision will be affirmed.

## PROCEDURAL BACKGROUND

On April 2, 2021, Morris applied for child's insurance benefits based on disability and supplemental security income, alleging a disability onset date of December 31, 2004. (ECF No. at 10-3 at 17.) After her claims were denied initially and on reconsideration, she requested a hearing before an administrative law judge (ALJ). (*Id.*) The ALJ held a telephonic hearing on November 15, 2023 and, on February 15, 2024, denied Morris's disability claim, concluding that Morris was not disabled. (*Id.* at 17, 33.) The ALJ explained that if Morris stopped her substance abuse, she has the residual functional capacity (RFC) to perform light work, but with nonexertional limitations, and could perform a significant number of jobs in the national economy. (*Id.* at 17–33.) On July 17, 2024, the Appeals Council denied Morris's request for review of that decision. (*Id.* at 2–4.) Morris now seeks judicial review pursuant to 42 U.S.C. § 405(g).

---

[1] Frank Bisignano was sworn in as Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). The Clerk of Court is directed to correct the docket.

# BACKGROUND

According to her application, Morris was born on December 8, 1986, completed the 10th grade, and now lives with her two minor children. (ECF No. 10-3 at 20, 46–47.) She claimed disability due to severe post-traumatic stress disorder (PTSD), severe depression, multiple personality disorder, adjustment disorder, alcohol use disorder, moderate schizoaffective disorder, severe bipolar type, hyperlipidemia, ankylosing spondylitis, and HPV cervical cancer stage 2. (ECF No. 10-4 at 54.) She worked at a variety of jobs, including assembler (from October 31, 2016 through February 15, 2017), telemarketer (from October 1, 2017 through January 15, 2018), waitress (for three months in 2018), and cashier (from February 10, 2021 through March of 2021). (ECF No. 10-3 at 20.) Throughout this time, Morris's earnings were well below the thresholds for substantial gainful activity. (*Id.*)

At her hearing, Morris testified that she stopped working because of her mental health. (*Id.* at 48–49.) She further testified that she has difficulty sleeping, experiences bad dreams, sees evil spirits, feels everyone is out to get her, and struggles to go out in public, "even to grocery shop." (*Id.* at 50.)

In December 2021, at the initial review level, state agency psychologist Susan Donahoo, Psy.D, opined that Morris would do best in a job with limited exposure to the general public and working near but not with others. (ECF No. 10-4 at 14.) Donahoo also opined that Morris can maintain a daily schedule and adapt to infrequent workplace changes. (*Id.*) In January 2023, at the reconsideration level, state agency psychological consultant John Warren, Ed.D., opined that Morris could carry out simple tasks over a routine workday within acceptable attention, persistence, and pace tolerances and sustain the minimal demands associated with relating adequately with supervisors and co-workers but could not interact with the general public. (*Id.* at 51–52.)

Under the relevant Social Security regulations, a claimant is entitled to disabled child's insurance benefits if the claimant is 18 years old or older and has a disability that began before attaining age 22.[2] *See* 20 C.F.R. § 404.350(a)(5). In assessing Morris's claim for benefits, the ALJ followed the five-step sequential evaluation of disability set out in 20 C.F.R. § 404.1520(a)

---

[2] The ALJ noted that there are different time periods at issue for the Child Disability Benefit and SSI applications. For the Child Disability Benefit applications, the period under consideration is the alleged onset date, December 31, 2004, through the date that Morris turned 22, December 6, 2008. For the SSI application, the period at issue is the date of application, April 2, 2021, through the date of adjudication. (ECF No. 10-3 at 20, n.1.)

and 416.920(a). (ECF No. 10-3 at 18–19.) The ALJ noted that that Morris, born on December 8, 1986, had not attained age 22 as of December 31, 2004, the alleged onset date. (*Id.* at 20.) At step one, the ALJ concluded that Morris has not engaged in substantial gainful activity since the alleged onset date. (*Id.*) At step two, the ALJ found that Morris has the following severe impairments: degenerative disc disease of the lumbar spine, obesity, major depressive disorder, schizoaffective disorder, borderline personality disorder, PTSD, and polysubstance dependence. (*Id.*) At step three, the ALJ found that Morris's impairments, including her substance abuse, met Section 12.04 of the Listings. (*Id.* at 22–25.) But the ALJ further determined that if Morris were to stop her substance abuse, her impairments would not meet or equal any Listing even though her remaining limitations would cause more than a minimal impact on her ability to perform basic work activities. (*Id.* at 25–27)

The ALJ also found that absent substance abuse, Morris had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except she could occasionally stoop. (*Id.* at 27.) The ALJ then found that Morris could understand and remember simple instructions consistent with unskilled work; maintain concentration, persistence, and pace sufficient to carry out simple tasks for two-hour intervals over an eight-hour day with customary scheduled breaks; make simple work-related decisions; tolerate occasional changes in work setting; occasionally interact with supervisors and co-workers but not perform tandem tasks that require coordination with co-workers; and work in proximity to the public but not interact with the public for the performance of routine tasks. (*Id.*) At step four, the ALJ found Morris had no past relevant work. (*Id.* at 32.) Finally, at step five, the ALJ found there were a significant number of jobs in the national economy that Morris could perform which were identified by the vocational expert, including cleaner/housekeeper, laundry worker, and hand packager/inspector. (*Id.* at 32.) The ALJ therefore determined that Morris was not disabled.

## LEGAL STANDARD

The Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported [her] decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary

sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to [her] conclusion, but [s]he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053–54 (7th Cir. 2024) (citations omitted). All that is required is that "ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow a reviewing court to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id.* at 1054 (cleaned up) (citations omitted). In reviewing the record, the Court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998) (citations omitted). Judicial review is deferential and is limited to the rationales offered by the ALJ. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)).

## ANALYSIS

Morris challenges two aspects of the ALJ's decision.[3] She first claims that the ALJ's RFC did not include any limitations regarding her moderate limitation in concentration, persistence or pace. (ECF No. 13 at 5–8.) She also argues that the ALJ's symptom evaluation lacks evidentiary support, is "patently wrong," and violated Social Security Ruling 16-3p. (*Id.* at 9–15.) Neither challenge supports remand, so the Commissioner's decision will be affirmed.

I. **The ALJ Reasonably Accommodated Morris's Moderate Limitations in Concentration, Persistence, and Pace.**

In assessing Morris's limitations, the ALJ relied upon the opinions of Dr. Warren. In January 2023, Dr. Warren found that Morris had moderate limitations interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing herself. (ECF No. 10-4 at 51–52.) Regarding Morris's sustained concentration and persistence limitations, Dr. Warren

---

[3] The ALJ also evaluated Morris's physical impairments, (ECF No. 10-3 at 21–22), but Morris does not challenge any part of those evaluations, (*see* ECF No. 13 at 5–15). Accordingly, she has waived any arguments concerning her physical impairments. *United States v. Bard*, 73 F.4th 464, 473 (7th Cir. 2023) ("[A]rguments not raised in a party's opening brief are waived . . . [s]o we [will] not consider it further." (citing *United States v. Webster*, 775 F.3d 897, 904 (7th Cir. 2015))).

concluded that Morris was not significantly limited in her ability to carry out very short and simple instructions, sustain an ordinary routine without special supervision, and make simple work-related decisions. (*Id.*)

The ALJ found Dr. Warren's assessment persuasive and consistent with the record given that Morris had a few abnormalities with mood, affect, insight, and judgment but otherwise had normal thought processes and content, intact memory and concentration, normal grooming, speech, and eye contact, and was alert and oriented. (ECF No. 10-3 at 30.) The ALJ translated Dr. Warren's findings into an RFC assessment restricting Morris to understanding and remembering simple instructions consistent with unskilled work, simple tasks for two-hour intervals over an eight-hour day with customary scheduled breaks, and simple work-related decisions. (*Id.* at 27.)

Morris argues that that ALJ did not reasonably accommodate her concentration, persistence, or pace limitations because the ALJ should have included a limitation specifically related to her distractions and hallucinations. (ECF No. 13 at 5–8.) This argument lacks merit because the record confirms the ALJ's RFC accommodated Morris's concentration-based limitations. The regulations note that moderate limitation means that a claimant's functioning is "fair." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(2)(c); *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021). In *Pavlicek*, the Seventh Circuit explained that the regulations define "moderate" as "fair" and "a moderate limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace." 994 F.3d at 783. Dr. Warren elaborated in the narrative portion of the form, writing that Morris was "able to sustain the mental demands associated with carrying out simple tasks over the course of routine workday/workweek within acceptable attention, persistence, pace tolerances." (ECF No. 10-4 at 51.) This assessment was also consistent with other evidence in the record that the Morris could carry out simple instructions and make simple decisions with no significant limitations. (*See* ECF No. 10-3 at 30–31 (describing record evidence).) The ALJ's RFC thus sufficiently accommodated Morris's concentration-based limitations. *See Urbanek v. Saul*, 796 F. App'x 910, 914 (7th Cir. 2019) (finding that generic limitations, including limiting a claimant to simple tasks, may properly account for moderate limitations in concentration, persistence, and pace if they adequately account for the claimant's demonstrated psychological symptoms in the record); *Pytlewski v. Saul*, 791 F. App'x 611, 615–16 (7th Cir. 2019) (holding that state agency psychologists' narrative summaries

that the claimant could perform simple repetitive tasks were consistent with "moderately limited" in maintaining attention and concentration for extended periods); *Gonzalez v. Berryhill*, No. 17-C-670, 2018 WL 4562541, at *7 (E.D. Wis. Sep. 24, 2018) ("[W]here a medical source, whose opinion the ALJ reasonably accords great weight, translates his own findings that the claimant may have moderate difficulties in [concentration, persistence, and pace] into an ultimate conclusion that the claimant can nevertheless perform simple, routine, and repetitive work, the ALJ does not err.").

II.  **The ALJ's Assessment of Plaintiff's Subjective Symptoms Was Not Patently Wrong.**

The ALJ found that when Morris's substance use was accounted for, her subjective statements about the intensity, persistence, and limiting effects of her symptoms were generally consistent with the evidence. (ECF No. 10-3 at 23.) The ALJ also found, however, that Morris's statements about the intensity, persistence, and limiting effects of her symptoms were not fully consistent with the record during periods of relative sobriety. (*Id.* at 27.) The ALJ stated that "[t]he record contains periods of sobriety during which it is possible to ascertain the claimant's functioning were she to abstain from acute substance use (Social Security Ruling 13-2p)" and documented the periods of time when Morris was not consistently abusing drugs or alcohol. (*Id.* at 28.) During these periods, Morris saw a therapist and established care with a psychiatrist, and the ALJ noted that while the psychiatrist prescribed medications to manage hallucinations and abnormal moods and documented clinical signs including abnormal mood and affect and limited insight and judgment, Morris also exhibited organized and coherent thought processes, attentive behavior, normal speech rate and tone, and thought content without abnormalities. (*Id.*)

Morris argues that the ALJ did not sufficiently discuss the symptom evaluations factors set forth in SSR 16-3p and instead relied on a summary of normal and abnormal findings in the medical records. (ECF No. 13 at 10.) Contrary to Morris's suggestion, the record adequately supports the ALJ's analysis and conclusions. When determining the existence or extent of a disability, SSR 16-3p requires ALJs to consider a claimant's "own description or statement of . . . her physical or mental impairment(s)." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). This is a two-step process. First, the ALJ considers "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." *Id.* at *3. Second, if there is such an impairment, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms

limit an individual's ability to perform work-related activities." *Id.* Because an ALJ "is in the best position" to make this credibility determination, reviewing courts will reverse it only if "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (citations omitted); *see also Tutwiler v. Kijakazi*, 87 F.4th 853, 859 (7th Cir. 2023).

The ALJ considered Morris's testimony that she had social anxiety, trouble concentrating, hallucinations, and insomnia. (ECF No. 10-3 at 23.) The ALJ also noted that the record contained recurrent periods of suicidal ideations and hospitalizations. (*Id.*) The ALJ further found that when Morris stopped abusing substances, she could perform a range of simple unskilled work. (*Id.* at 27–28.) Ultimately the ALJ concluded that the RFC assessment was supported by the prior administrative medical findings as well as Morris's improved functioning during periods of relative sobriety. The ALJ stated that "[a]lthough [Morris] continues to demonstrate abnormal moods and affects and limited insight and judgment, she otherwise had normal clinical signs, she was cognizant of her need for regular treatment, and she understood the importance of improving her coping skills." (*Id.* at 32.)

Morris also argues that the ALJ failed to analyze a third-party report from Morris's mother. (ECF No. 13 at 14–15.) The record shows, however, that the ALJ acknowledged the report and noted that it contained similar limitations to Morris's own function report. (ECF No. 10-3 at 23.) That is sufficient. *See Johnson v. O'Malley*, No. 23-CV-130, 2024 WL 98430, at *5 (E.D. Wis. Jan. 9, 2024) (finding that the ALJ did not err by omitting discussion of a third-party report from the claimant's mother where the report and testimony "were largely duplicative of other record evidence already reviewed by the ALJ including [the claimant's] record and testimony, and therefore redundant"). The ALJ acknowledged the existence of the report and its similarity to Morris's report and did not err in failing to say more.

Morris's contention that the ALJ's assessment of Morris's subjective complaints was lacking does not withstand scrutiny. The ALJ provided a thorough evaluation of the medical evidence. "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) (citation omitted). And, "an ALJ need not discuss every detail related to every factor" in assessing a claimant's subjective symptoms. *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021) (citing *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir.

2013)). Morris has not shown that the ALJ's evaluation of her symptoms lacked substantial evidentiary support or was "patently wrong." *See Simila*, 573 F.3d at 517.

As previously noted, an ALJ "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053–54 (citations omitted). An ALJ's decision should be affirmed when the ALJ minimally articulates the bases for her conclusions. *See Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). Because none of Morris's asserted grounds provides a basis for remand, the Commissioner's decision is affirmed, and the case is dismissed.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner of the Social Security Administration is **AFFIRMED**, and the case is **dismissed**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on August 27, 2025.

s/ *Brett H. Ludwig*  
BRETT H. LUDWIG  
United States District Judge